IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
02 AUG 22 PM 12:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company, ) ) ) Plaintiff, ) ) vs. ) ) CITY OF HUNTSVILLE, ALABAMA, a municipal corporation, ) ) ) Defendant. ) | Civil Action No. _____ CV 02-J 2055-NE |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INTERPLEADER

COMES NOW, Level 3 Communications, LLC, a Delaware limited liability company ("Plaintiff") by and through its attorneys, Gentle Pickens Eliason & Turner and submits this Complaint for Declaratory Judgment and Interpleader against the City of Huntsville, Alabama ("Defendant"), as follows:

### A. PARTIES TO THE COMPLAINT

1.  Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 1025 Eldorado Boulevard, Broomfield, Colorado, 80021, doing business in Alabama and duly qualified to do business in Alabama (Plaintiff hereinafter sometimes referred to as "Level 3").

2.  Defendant is an Alabama municipal corporation whose address is 308 Fountain Circle, Huntsville, Alabama 35801 (Defendant hereinafter sometimes referred to as "the City" or "Huntsville").

### B. JURISDICTION AND VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it involves a federal question under the Communications Act of 1934, as amended, including without limitation the amendments made by the Telecommunications Act of 1996 (the "Telecommunications Act"), 47 U.S.C. § 253, and under the Supremacy Clause in Article VI of the United States Constitution. This Court further has pendant jurisdiction over Plaintiff's state law claims, as they arise from the same nucleus of operative facts.

5. A request for declaratory judgment is proper under 28 U.S.C. § 2201 and is being made pursuant to Rule 57 of the Federal Rules of Civil Procedure.

### C. ADDITIONAL BACKGROUND AVERMENTS

6. Level 3 is a telecommunications company with a nationwide fiber optic telecommunications network. In its construction of this network, Level 3 has entered into certain right-of-way agreements with various governmental and private entities for the use of rights-of-way to install underground conduits and fiber. A portion of Level 3's network passes through the City of Huntsville.

7. Level 3 is a certificated telecommunications company in the State of Alabama, having received a Certificate of Public Convenience and Necessity ("CPCN") from the Alabama Public Service Commission on February 2, 1999, in Docket No. 26796, which CPCN authorized Level 3 to provide local exchange service and telephone toll service within Alabama. Level 3 utilizes its conduits and fiber located within Huntsville and within the State of Alabama to service customers on a nationwide basis.

8. Level 3 began its efforts to work with the City regarding construction of a portion of its telecommunications network within City rights-of-way in October, 1999. The route of the network through Huntsville was, and remains, a necessary component to the operation of the Level 3 network as a whole. Once Level 3 was able to engage the City in discussions of its construction plans in January, 2000, the City informed Level 3 that it would not begin to negotiate a right-of-way agreement until the route for the network within City rights-of-way was resolved. Level 3 worked for months with the City to establish an agreeable route. The parties were finally able to agree upon a route for Level 3's network in late June, 2000.

9. While the City indicated that it would not work on a right-of-way agreement until an agreeable route was established, in an effort to expedite the process, Level 3 provided the City with a proposed right-of-way agreement on April 18, 2000, nevertheless. Without knowing precisely what the City's actual costs were, Level 3 proposed an annual fee of $.50 per linear foot. The City did not discuss or negotiate the terms of Level 3's proposed agreement, but on September 18, 2000, the City sent Level 3 an entirely new proposed agreement. The new proposed agreement prepared by the City contained a rate structure that began at $6.00 per linear foot per year for the first five (5) year term and escalated to $8.00 per linear foot per year for a second five (5) year term. Between September 18, 2000, and October 12, 2000, various revisions were exchanged by the parties. On October 12, 2000, the City sent Level 3 the final draft of the Agreement, which draft was also presented by the City to the City Council of Huntsville for approval on October 12, 2000. The City Council approved the right-of-way agreement as Ordinance No. 00-819 ("Ordinance") on October 12, 2000, and the Ordinance was sent to Level 3 for acceptance and execution.

10. Because the process to establish an effective agreement took more than a year, and such delay had forced Level 3's construction plans behind schedule, Level 3 was required to adhere to the unreasonable terms imposed by the City at the last minute in the Ordinance, including without limitation, high and unjustified annual fees for use of the right-of-way and in-kind compensation to the City that Level 3 would not otherwise have accepted. The annual "use" fees that were ultimately imposed upon Level 3 are $4.50 per linear foot of conduit for the initial five (5) year term of the agreement, $6.00 per linear foot of conduit for the first additional term of five (5) years, and $7.50 per linear foot of conduit for the second additional term of five (5) years. By October, 2000, when the City's draft right-of-way agreement was presented to Level 3 on a "take it or leave it" basis, Level 3 was simply not able to afford any further delay in construction and operation of its network. Therefore, rather than incur additional delay in construction and implementation of an important part of its network, Level 3 agreed to accept the adhesion agreement represented by the Ordinance and Level 3 accepted the Ordinance by execution thereof on October 13, 2000. Concurrently with its acceptance of the Ordinance, Level 3 paid a one-time administrative application fee of One Thousand Five Hundred Dollars ($1,500.00) to the City pursuant to the terms of said Ordinance.

11. Pursuant to the provisions of Ordinance 00-819, Level 3 provided a $3,000,000 corporate surety bond to guarantee the timely completion and faithful performance of its work, including its operation and maintenance and the performance of Level 3's obligations under the Ordinance, which bond was reduced after completion of construction as agreed to by the City to the amount of $500,000 and the bond, in said amount, continues to be maintained by Level 3 for the benefit of the City. A maintenance bond of $500,000 is excessive and is not rationally related to the City's reasonable maintenance and control of its rights-of-way. The City's reasonable interests

4

would be sufficiently protected by a bond amount of at least ten (10) times less. Further, Level 3 maintains insurance, including without limitation, commercial general liability insurance, with the City named as an additional insured on said policies, against claims arising out of the use of the City's rights-of-way.

12. Further, under the Ordinance, Level 3 is required to remove or relocate its facilities in the event of an alteration or change in grade or location of any street in which its facilities are located, at its sole cost and expense. Finally, Level 3 agreed, in the Ordinance, to indemnify and hold the City harmless against all claims described therein, including without limitation, any act or omission of Level 3 or its agents, employees, representatives, contractors or subcontractors in the construction, operation, maintenance, repair, removal or service of its facilities in the City rights-of-way.

13. After passage of Ordinance 00-819, Level 3 received permits to construct and did construct conduit and pull its fiber underground in the City's rights-of-way. As a further condition of the Ordinance, Level 3, at its sole expense, installed two (2) manholes and four (4) strands of dark fiber to be dedicated for the exclusive use of the City.

14. In late 2000, Level 3 and the City began discussions about Level 3 installing, for the benefit of the City, eight (8) additional manholes and eight (8) additional dark fibers which the City would have exclusive use of for its own telecommunications needs. As consideration for such additional in-kind compensation to the City, it was agreed that Level 3 would receive a credit against the annual use fee due the City for the installment costs of the additional manholes and dark fibers in the amount of $105,534 (the "Credit Amount."). Level 3 and the City then began negotiations on an amendment to the Ordinance in the Spring of 2001, to formally document the

5

parties' agreement concerning the additional in-kind compensation from Level 3 and the Credit Amount due Level 3. Further, it was agreed by the parties that the Credit Amount would apply to the use fee due from Level 3 in 2001. On the basis of these negotiations, and with the City's approval, the use fee paid by Level 3 in October, 2001, did not include the Credit Amount, although an amendment to the Ordinance had not yet been approved by the City Council of Huntsville, nor accepted by Level 3.

15. At about the same time discussions were commencing between Level 3 and the City with respect to the additional in-kind compensation to the City and the Credit Amount for Level 3, the Alabama Supreme Court in Lightwave Technologies, LLC v. Escambia County, 804 So. 2d 176 (Ala. 2001) struck down, as an impermissible and excessive tax, a $1.00 per linear foot fee imposed by Escambia County on Lightwave Technologies, LLC, a telecommunications provider, for use of the County's rights-of-way. The case came before the Alabama Supreme Court after the United States District Court for the Southern District of Alabama, Southern Division, determined that the fee being imposed by Escambia County was a tax rather than a regulatory or user fee because it exceeded Escambia County's costs of managing the rights-of-way. See Lightwave Technologies, L.L.C. v. Escambia County, 43 F. Supp. 2d 1311, 1316 (S.D. Ala. 1999).

16. Given the change in applicable law due to the Alabama Supreme Court's Lightwave Technologies decision and decisions of other jurisdictions with respect to management of rights-of-way under the Telecommunications Act at 47 U.S.C. § 253, Level 3 sought to open a discussion with the City of Huntsville to amend the fee structure under the Ordinance to a structure that was legally compliant. The present compensation rate due from Level 3 under the Ordinance is greatly in excess of the City's reasonable or actual cost of managing Level 3's occupation of the City rights-of-way

since Level 3 is solely responsible for the cost of installation, maintenance, relocation and removal of its facilities in and from the City rights-of-way and since the City is fully protected by the liability insurance and surety bond carried by Level 3 pursuant to the Ordinance and by Level 3's indemnification of the City with respect to Level 3's obligations under the Ordinance.

17. After meeting once to discuss the changes in applicable law, the City refused to entertain any further discussion of compensation, notwithstanding the <u>Lightwave Technologies</u> decisions. The City further refused to provide Level 3 with any basis on which it derived the amount of the annual use fee, including providing comparable use fees and other compensation for other City rights-of-way users or any information supporting the use fee rate structure and in-kind compensation imposed on Level 3 as being fair, reasonable and based on the City's costs to administer its rights-of-way.

18. Contemporaneously with the City's refusal to discuss the compensation due from Level 3 under the Ordinance, the City indicated that Level 3's ability to complete the additional in-kind compensation that had been contemplated and was to be documented by the proposed amendment to the Ordinance was conditioned upon the amendment being approved by the City Council and then executed by Level 3. Given the City's refusal to discuss the overall compensation structure of the right-of-way Ordinance, the proposed amendment to the Ordinance, which also contains the same onerous annual use fee rate structure as the Ordinance, has not been finalized by the parties. Further, Level 3 has not turned over the additional in-kind compensation of the eight (8) additional manholes and eight (8) strands of dark fiber to the City for its use as was contemplated by the proposed amendment to the Ordinance. Accordingly, the basis for the Credit Amount taken

by Level 3 in October, 2001, as consideration for the additional in-kind compensation to the City no longer exists.

20. Upon payment of the Credit Amount by Level 3, Level 3 will have made direct payments, pursuant to the Ordinance, of $172,156.50, at $4.50 per linear foot of right-of-way occupied, an amount that is four and a half times the amount of the fee struck down by the Alabama Supreme Court in Lightwave Technologies. In additional to these monetary payments, Level 3 will also have provided to the City, at Level 3's sole expense, two (2) manholes and four (4) strands of dark fiber; this in-kind compensation cost Level 3 approximately $83,080 in incremental capital (which does not include charges for trenching and/or boring the right-of-way to install the conduit holding the fiber), has a market value of $130,397, and replacement value to the City of approximately $4,829,667 (assuming the City paid for trenching and/or boring the right-of-way to install the conduit holding the fiber).

### D. COUNTS

### COUNT I

### DECLARATORY JUDGMENT ON STATUS OF COMPENSATION FOR USE OF CITY OF HUNTSVILLE RIGHTS-OF-WAY

20. Plaintiff restates, repeats, realleges, and incorporates herein by reference all of the averments set forth in paragraphs 1 through 19 above as if set forth verbatim herein.

21. A justiciable controversy exists between the parties as to the effect of the Alabama Supreme Court's decision in Lightwave Technologies, LLC v. Escambia on the reasonableness, legality and propriety of (i) the annual use fees in the amount of $4.50 per linear foot of conduit in the City's rights-of-way for the first five (5) years of the initial term, $6.00 per linear foot of conduit

for the five (5) years of the first additional term, and $7.50 per linear foot of conduit for the second five (5) years of the second additional term and (ii) the in-kind compensation imposed on Level 3 by the Ordinance.

22.     Prior to the Alabama Supreme Court's consideration of <u>Lightwave Technologies, LLC v. Escambia County</u>, Lightwave filed a declaratory judgment action against Escambia County in the United States District Court for the Southern District of Alabama asking that court to find that the right-of-way fee of $1.00 per foot required of Lightwave by Escambia County violated the Telecommunications Act. <u>Lightwave Technologies, L.L.C. v. Escambia County</u>, 43 F. Supp. 2d 1311 (S.D. Ala. 1999). In response, Escambia County filed a motion to dismiss Lightwave's action for lack of subject matter jurisdiction on the ground that the Tax Injunction Act, codified at 28 U.S.C. § 1341, prohibited the court from rendering a declaratory judgment on the matter. The court held that, although it could not render a declaratory judgment under the Tax Injunction Act, the issue of whether the right-of-way charges constituted a tax under said Act was a matter to be decided under federal law. Id. at 1314. The federal court found that the $1.00 per foot charge was indeed a "tax" rather than a regulatory fee since the County (i) did not base the right-of-way fee on the cost of maintaining its rights-of-way, (ii) imposed the same fee for use of its rights-of-way regardless of the nature of the use, (iii) required Lightwave to bear all costs of restoring the County rights-of-way, and (iv) used the per foot fee for the benefit of all County residents in maintenance of the County's roads and bridges. <u>Id</u>.

23.     Level 3 contends that all the compensation required by the Ordinance, both monetary and in-kind, is a tax rather than a regulatory fee or user fee, as determined by the United States

District Court in the federal court <u>Lightwave</u> decision, and, on information and belief, the City of Huntsville believes that the compensation imposed by the Ordinance is not a tax.

24.     Level 3 is unaware of, and the City has refused to provide to Level 3, any legal basis for the City's annual use fee rate structure or for the in-kind requirements imposed on Level 3 by the Ordinance or any basis on which the annual use fee rate structure should not be considered a tax under the federal court <u>Lightwave</u> decision.

WHEREFORE, PREMISES CONSIDERED, Level 3 prays this Court to take jurisdiction of this cause, and upon final hearing to:

(a)     Declare that the compensation imposed upon Level 3 by the Ordinance, consisting of a user fee and in-kind compensation, is a tax rather than a regulatory or user fee; and

(b)     Enter such orders, judgments and decrees as may be necessary and proper to give effect to the rights, duties and liabilities of the parties as determined and declared by the Court.

## COUNT II

## DECLARATORY JUDGMENT AS TO COMPLIANCE WITH 47 USC § 253(a)

25.     Plaintiff restates, repeats, realleges, and incorporates herein by reference all of the averments set forth in paragraphs 1 through 24 above as if set forth verbatim herein.

26.     A justiciable controversy exists between the parties as to whether the Ordinance, including without limitation, the provisions setting forth the amount of the user fee in the initial term and first and second additional terms and the in-kind compensation to the City imposed by the Ordinance are violative of 47 U.S.C. § 253. Section 253(a) of the Telecommunications Act prohibits states and local authorities from enacting rules, regulations or requirements that prohibit or have the effect of prohibiting any entity from providing telecommunications services.

27. As set forth in this Complaint, the obligations and requirements imposed on Level 3 in the Ordinance by the City, after months and months of attempted negotiation of a right-of-way agreement and then the hasty and last minute delivery of the Ordinance constituted a required precondition to Level 3 being permitted access to the City's rights-of-way for the purpose of providing telecommunications services.

28. If Level 3 had not agreed to the obligations and requirements imposed in the Ordinance, including without limitation, those set forth in this Complaint, the City would not have issued permits to Level 3 to construct its facilities in the City's rights-of-way, which refusal would have prevented Level 3 from providing telecommunications services in violation of 47 U.S.C. § 253(a).

29. The City's actions described in this Complaint, individually and collectively, including without limitation the demands, procedures, delays and unfettered discretion exercised over Level 3's ability to access the public rights-of-way and provide telecommunications service, are regulations and requirements that prohibit or have the effect of prohibiting Level 3 from providing telecommunications services in violation of 47 U.S.C. § 253(a).

30. Further, the Ordinance, including, without limitation, the compensation required to be paid by Level 3 thereunder, consists of regulations or requirements that prohibit or have the effect of prohibiting Level 3 from providing telecommunications services in violation of 47 U.S.C. § 253(a), which therefore constitutes a violation of the Supremacy Clause of the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, Level 3 prays this Court to take jurisdiction of this cause, and upon final hearing to:

(a) Declare the actions of the City in connection with the Ordinance violate the provisions of 47 U.S.C. § 253(a) and the United States Constitution;

(b) Declare the actions of the City, including without limitation, its failure to act on Level 3's request for permission to occupy public rights-of-way in an expeditious and reasonable manner, prohibited or had the effect of prohibiting Level 3 from providing telecommunications services in violation of 47 U.S.C. § 253(a); and

(c) Enter such orders, judgments and decrees as may be necessary and proper to give effect to the rights, duties and liabilities of the parties as determined and declared by the Court.

## COUNT III

## DECLARATORY JUDGMENT AS TO COMPLIANCE WITH 47 U.S.C. § 253(c)

31. Plaintiff restates, repeats, realleges, and incorporates herein by reference all of the averments set forth in paragraphs 1 through 30 above as if set forth verbatim herein.

32. The City's actions are not permitted by the provisions of 47 U.S.C. § 253(c) wherein a local or state government may manage its public rights-of-way and require "fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, ... if the compensation required is publicly disclosed by such government."

33. The City's imposition on Level 3 of the monetary and in-kind compensation provisions set forth in the Ordinance are not directly related to management of the City's rights-of-way and do not constitute fair and reasonable compensation. Such management is traditionally evidenced by the preservation of the physical condition of its streets, control of traffic, limiting disruption caused by construction, enforcing building codes, and the like. The compensation due from Level 3 under the Ordinance is not reasonably related to these functions of management of the

City rights-of-way. Further, the City refuses to publicly disclose the basis upon which the compensation set forth in the Ordinance was based, in further violation of 47 U.S.C. § 253(c). On information and belief, the City of Huntsville contends that the compensation imposed by the Ordinance is fair and reasonable and that it has no obligation to publicly disclose the basis upon which the compensation rate was determined.

34. Further, the annual use fee rate structure and the in-kind compensation imposed upon Level 3 by the City in the Ordinance, does not constitute a fair and reasonable compensation to the City for management of its rights-of-way, on a competitively neutral basis, with the basis for the compensation being publicly disclosed, in violation of 47 U.S.C. § 253(c), which therefore constitutes a violation of the Supremacy Clause of the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, Level 3 prays this Court to take jurisdiction of this cause, and upon final hearing to:

(a) Declare the actions of the City in connection with the Ordinance violate the provisions of 47 U.S.C. § 253(c) and the United States Constitution;

(b) Declare the annual use fees and in-kind compensation imposed on Level 3 by the Ordinance are not fair and reasonable compensation for the use of the City's rights-of-way in violation of 47 U.S.C. § 253(c); and

(c) Enter such orders, judgments and decrees as may be necessary and proper to give effect to the rights, duties and liabilities of the parties as determined and declared by the Court.

## COUNT IV

### DECLARATORY JUDGMENT AS TO VIOLATION OF 42 U.S.C. § 1983

35. Plaintiff restates, repeats, realleges, and incorporates herein by reference all of the averments set forth in paragraphs 1 through 34 above as if set forth verbatim herein.

36. A citizen's deprivation of the "rights, privileges, or immunities secured by the Constitution and laws" of the United States is prohibited by 42 U.S.C. § 1983.

37. The Ordinance and the actions of the City, individually and collectively, violated and continue to violate Level 3's rights under 47 U.S.C. § 253. Accordingly, the City has also violated 42 U.S.C. § 1983.

WHEREFORE, PREMISES CONSIDERED, Level 3 prays this Court to take jurisdiction of this cause and, upon final hearing, to:

(a) Declare the City's violation of 47 U.S.C. § 253 deprived, and continues to deprive Level 3 of the rights, privileges or immunities secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

(b) Enter such orders, judgments and decrees as may be necessary and proper to give effect to the rights, duties and liabilities of the parties as determined and declared by the Court.

## COUNT V

### INTERPLEADER

38. Plaintiff restates, repeats, realleges, and incorporates herein by reference all of the averments set forth in paragraphs 1 through 37 above as if set forth verbatim herein.

39. If the provisions of the Ordinance concerning the amount of the annual user fee are upheld, Level 3 is due to pay the City of Huntsville an additional $105,534, representing the Credit

Amount. Level 3 is claiming that the compensation required by the Ordinance is in excess of that allowed by state and federal law and, accordingly, hereby pays such Credit Amount into the Court and shall pay any further annual user fees into the Court to be held until such time as the Court determines the rights of the parties herein to such Credit Amount and fees.

WHEREFORE, PREMISES CONSIDERED, Level 3 prays the Court to take jurisdiction of this cause, and upon final hearing, to:

(a)   Declare the proper disposition of the payments made by Level 3 into the Court; and

(b)   Enter such orders, judgments and decrees as may be necessary and proper to give effect to the rights, dues and liabilities of the parties as determined and declared by the Court.

RESPECTFULLY SUBMITTED this the 22nd day of August, 2002.

Edgar C. Gentle, III, Alabama State
Bar No. ASB-0349-E68E

Deborah A. Pickens, Alabama State
Bar No. ASB-0519-171D

Attorneys for Level 3 Communications

OF COUNSEL:
GENTLE, PICKENS, ELIASON & TURNER
Suite 1200 - Two North Twentieth Building
2 North 20th Street
Birmingham, Alabama 35203
(205) 716-3000

Please serve Defendant at the following address by certified mail:
The City of Huntsville
c/o Mayor Loretta Spencer
308 Fountain Circle
Huntsville, Alabama 35801