# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LEVEL 3 COMMUNICATIONS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: CV-02-VEH-2055-NE** |
| | ) | |
| **CITY OF HUNTSVILLE, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OF OPINION</u>

This matter is before the court on the parties' cross motions for summary judgment[1]. The plaintiff is Level 3 Communications, L.L.C. ("Level 3"); the defendant is the City of Huntsville, Alabama ("City").

This action involves construction of the provisions of the Telecommunications Act of 1996 ("the Act") that prohibit state or local governments from erecting barriers to any entity wishing to provide interstate or intrastate telecommunications services. 47 U.S.C. § 253. Level 3 has brought this action seeking declaratory judgment and an injunction prohibiting the City from enforcing Ordinance No. 00-819, "An Ordinance Respecting the Use of the Public Rights-of-Way in the City of Huntsville,

---

[1] Level 3's Motion as to Count 4, violation of 42 U.S.C. §1983, is for partial summary judgment, that is, declaratory judgment with a trial as to damages and an award of attorney fees.

Alabama by Level 3 Communications"[2] (the "Ordinance").  The Complaint has five counts: (1) Count I, Declaratory Judgment on Status of Compensation for Use of City of Huntsville's Rights-Of-Way[3]; (2) Count II, Declaratory Judgment as to Compliance with 47 U.S.C. § 253(a); (3) Count III, Declaratory Judgment as to Compliance with 47 U.S.C. §253(c); (4) Count IV, Declaratory Judgment as to Violation of 42 U.S.C. § 1983; and (5) Count V, Interpleader[4].  The gravamen of Level 3's Complaint is that the City of Huntsville has violated 47 U.S.C. § 253(a) and that such violation is a violation of the Supremacy Clause of the United States Constitution[5].

While the legal issues raised by Level 3 and the applicable statutory analysis of its challenges have previously reached and been discussed by the Eleventh Circuit, *BellSouth v. Town of Palm Beach*, 252 F.3d 1169 (11th Cir. 2001) ("*Palm Beach*"),

---

[2]  The Ordinance deals only with Level 3 and is not an ordinance of general application.

[3]  In its MSJ, Level 3 makes clear that its first argument is that the compensation provision of the Ordinance is unlawful under 47 U.S.C. § 253, and that it seeks a declaration that the compensation is a tax only in the alternative, that is, if the Court does not rule that the compensation is unlawful.  (See, Movant Level 3 Communications Initial Submission in Response to Exhibit A of the Court's Order ("Level 3's MSJ brief"), at page 21.

[4]  Which seeks instruction as to the payment of the annual fees paid by Level 3 into the Court's register.

[5]  Since the basis for the claim of a constitutional violation under the "supremacy clause" is that federal law preempts both the actions of the City and the Ordinance, the Constitutional and federal preemption claims  are essentially the same and do not require separate analysis.

they remain unresolved.  In the interim, the Supreme Court has provided § 1983

guidance in *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ("*Gonzaga"*) the court finds

helpful, and other Circuits have decided cases involving challenges under the Act,

*e.g. TCG Detroit v. City of Dearborn*, 206 F.3d 618 (C.A.6 (2000); *Qwest Corp. v.

City of Santa Fe, New Mexico*, 380 F.3d 1258, 1269 (10th Cir. 2004) ("*City of Santa

Fe"*).  The court uses the analytical framework of *Palm Beach* and *Gonzaga*, and the

substantive analysis of other Circuits such as *TCG Detroit* and *City Of Santa Fe* to

resolve Level 3's claims.

I.      FACTUAL BACKGROUND.

        Level 3 is a Delaware limited liability company that provides

telecommunications services covered under the Act.  The City is an Alabama

municipal corporation authorized by statute.  Since 1999, Level 3 has held a statewide

franchise authorizing it to provide telecommunications services in Alabama and to

construct its lines along the margin of the rights-of-way of public highways.  In 1999

and 2000, Level 3 constructed a national fiber optic network.  In January, 2000[6],

Level 3 approached the City to obtain authorization to construct its network within

the City, using public rights-of-way.  The City, then and now, did not have written

_____

        [6]  Level 3 argues that the first approach occurred in October, 1999, however, it offers no
admissible evidence to support that argument.

3

general requirements for the authorization of "through-put" telecommunications service providers such as Level 3[7].  The City and Level 3 negotiated the terms and conditions upon which Level 3 would occupy the City's rights-of-way.  On October 12, 2000, the City adopted the Ordinance, specific to Level 3, which provides, *inter alia*, for Level 3 to pay the City compensation for its occupancy of the rights-of-way.

II.    SUMMARY JUDGMENT STANDARD.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories,

---

[7]  Level 3 does not, and has not sought to, provide telecommunications services within the City.

4

and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such

a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a

6

directed verdict motion at trial based on the alleged evidentiary deficiency.  However,

when responding, the non-movant can no longer rest on mere allegations, but must

set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

III.   DISCUSSION.

   A.   <u>§ 253 of the Telecommunications Act of 1996</u>.

47 U.S.C. § 253 provides:

> § 253.       Removal of barriers to entry
> (a)    In general
> No State or local statute or regulation, or other State or local legal
> requirement, may prohibit or have the effect of prohibiting the
> ability of any entity to provide any interstate or intrastate
> telecommunications service.
> (b)    State regulatory authority
> Nothing in this section shall affect the ability of a State to impose,
> on a competitively neutral basis and consistent with section 254
> of this title, requirements necessary to preserve and advance
> universal service, protect the public safety and welfare, ensure the
> continued quality of telecommunications services, and safeguard
> the rights of consumers.
> (c)    State and local government authority
> Nothing in this section affects the authority of a State or local
> government to manage the public rights-of-way or to require fair
> and reasonable compensation from telecommunications providers,
> on a competitively neutral and nondiscriminatory basis, for use of
> public rights-of-way on a nondiscriminatory basis, if the
> compensation required is publicly disclosed by such government.

   1.   Scope of preemption.

7

In this Circuit, the preemptive scope of 47 U.S.C. § 253 was addressed by the Court in *BellSouth v. Town of Palm Beach*, 252 F.3d 1169 (11th Cir. 2001)("*Palm Beach*"). The Court held in *Palm Beach* that "subsection (a) [of 47 U.S.C. § 253] contains the only substantive limitations on state and local government regulation of telecommunications, and that subsections (b) an (c) are [not substantive limitations, but rather are] 'safe harbors,' functioning as affirmative defenses to preemption of state or local exercises of authority that would otherwise violate (a)." *Id*., at 1187.

> 2.     Private cause of action.

*Palm Beach* held that "a private cause of action in federal district court [as opposed to a petition to the Federal Communications Commission under subsection (d)] exists under § 253 to seek preemption of a ... local ... ordinance, or other regulation only when that ordinance, or other regulation purports to address the management of the public rights-of-way, thereby potentially implicating subsection (c)." *Id*., at 1191.  The City's actions vis-a-vis Level 3, and the Ordinance at least "purport" to address the management of the public rights-of-way.  Therefore, under *Palm Beach*, this court is the correct forum.

> 3.     Determination of a violation under subsection (a) precedes analysis under subsection (c).

The Eleventh Circuit has not stated what "exercises of authority" by a city are a violation of subsection (a).  However, *Palm Beach* made clear that a district court

deciding the issue must first determine whether the ordinance (or particular sections thereof) violated subsection (a) and only if a violation was found would the court consider "whether the individual sections of the ordinance[] fell within the [safe harbor] parameters of [subsection] (c)." *Id*.

        4.        Burden of proof of a violation falls on Level 3.

*Palm Beach* clearly establishes that the existence of a § 253(a) violation is the essence of a § 253 claim. *See also*, *Qwest Corp. v. City of Portland* 200 F.Supp.2d 1250, *1255 -1256 (D.Or., 2002) (" The burden is on Qwest to show that § 253(a) bars the challenged requirements." (Citations omitted)). Level 3 has the burden of establishing, at summary judgment, that such a violation has occurred.

> A plaintiff seeking summary judgment who has failed to produce such evidence on one or more essential elements of his cause of action is no more 'entitled to a judgment' (Rule 56(c) Fed.R.Civ.Proc.) than is a plaintiff who has fully tried his case and who has neglected to offer evidence sufficient to support a finding on a material issue upon which he bears the burden of proof. (*See* 6 J. Moore, Federal Practice (2d ed. 1966) [hereinafter cited as Moore] ¶56.22[2], at 2825.) In either situation there is a failure of proof.

*Lloyd v. Lawrence* 472 F.2d 313, *318 (C.A.5, 1973). Level 3 bears the burden of establishing proof of this essential element in the face of the City's affirmative proof of the absence of evidence in the record to support a judgment for Level 3. *Fitzpatrick, op. cit.*, 2 F.3d at 1115-16.

>5.   A prohibition is a violation; mere inconvenience is not.

To determine whether a violation has occurred, the court first looks at the language of the statute. Section 253 (a) states that "No State or local regulation, or other State or local requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." The question becomes what does the language "prohibit" or "hav[ing] the effect of prohibiting" mean? The parties have not cited, nor has the court found, any Eleventh Circuit precedent on this point. Other district courts that have addressed the issue have found that a violation of subsection (a) occurs whenever a <u>substantial</u> barrier to entry of competition occurs. *BellSouth v. City of Mobile*, 171 F.Supp.2d 1261, 1281-1282 (S.D. Ala. 2001) ("Section 253 speaks in terms of a prohibition, not in terms of minor delays [or increased costs of doing business] that may be incurred."); *Qwest Corp v. City of Portland*, 200 F.Supp. 2d 1250, 1255-1256 (D. Or. 2002) ("If the challenged requirements do not prohibit or have the effect of prohibiting the ability of an entity to provide a telecommunications service, § 253 does not preempt the requirements and the court's inquiry is complete. *City of Eugene,* 177 Or.App. at 407, 35 P.3d at 1046. If, and only if, a requirement does prohibit or has the effect of prohibiting the ability to provide a telecommunications

service, the court then must determine whether the requirement is protected by the safe-harbor provisions of § 253(b) or (c). *City of Auburn,* 260 F.3d at 1177.")

       6.    The fact that Level 3 had to go through an application process, and to pay compensation, is not a *per se* violation of § 253.

Level 3's argues that the process it went through, and the Ordinance itself, which imposed compensation requirements on Level 3, are *per se* violations of § 253. This argument has been rejected by the only circuits to address the issue.

> The provider must apply for a franchise; the City assesses a franchise fee; no fee paid, no franchise given. That cannot "be described as a prohibition [within the meaning of section 253(a) ]." *Id.* at 19 (quoting *AT & T Communications of the Southwest, Inc. v. City of Austin*, 975 F.Supp. 928, 939 (W.D.Tex.1997)). The issue here is not, as in AT & T Communications, a municipality's withholding of consent to a franchise application, something the City never contemplated vis à vis TCG, but rather TCG's challenge to a fee that the Act would appear, on its face, explicitly to permit, if "fair and reasonable" and "competitively neutral and non-discriminatory."

*TCG Detroit,* 206 F.3d 618, *624. "[T]he mere naked requirement of a registration or lease with the city is not *per se* prohibitive within the meaning of the statute. *See TCG Detroit*, 206 F.3d at 624; *In re Classic Telephone, Inc.*, 11 F.C.C.R. 13082, 13097, 1996 WL 554531 (1996)." *Qwest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1269 (10th Cir. 2004)  This court agrees with the reasoning of *TCG*

*Detroit*[8] that there is no *per se* violation of § 253 arising from application and fee requirements.  Here, as in *TCG Detroit*, the undisputed evidence is that the City never contemplated denying Level 3 access to its rights-of-way.[9]  "A violation of § 253(c) might well *not* involve violating § 253(a); unfair or unreasonable fees need not rise to the level of erecting a barrier to entry."  *TCG Detroit*, at 624.

Level 3's failure to come forward with any evidence of the impact of the "delay" in processing its application, or of the impact of the City's fees on it, is fatal to Level 3's claims based on delay or fees.  Similarly, the complaints about the information "required" by the City (as part of the application process) fail because the uncontroverted evidence is that all Level 3 did to comply was to provide the City with copies of existing public documents and the proposed route it wished to use.

       7.  Other challenged provisions of the Ordinance .

         a.  "Unfettered discretion" generally

Provisions in omnibus ordinances of general application that grant a city "unfettered discretion" to prohibit the provision of services have been held to be prohibitive and therefore violative of § 253 (a).  *See*, *City of Santa Fe*, *op. cit.*, 380

---

[8] As followed in *City of Santa Fe*.

[9] *See*, Affidavit of Claudia K. Anderson at paragraphs 2, 4 and 8 (Exhibit GG to City's Opposition).

F.3d at 1270, citing *RT Communications, Inc.*, 201 F.3d 1264, 1268 (C.A. 10, 2000). Here, Level 3 has alleged such "unfettered discretion" on the part of the City generally, and as to specific provisions of the Ordinance.

As to Level 3's general allegations of "unfettered discretion," the discretion complained of arises not from the Ordinance, but from the fact that the City does not have any written regulations of general application.[10]  Level 3 has not cited any cases where the <u>absence</u> of regulation amounts to a violation of § 253(a), and the court declines the invitation to so hold.  In the absence of written regulation, the presence of "unfettered discretion" cannot as a matter of law be determined, and so an evidentiary record is necessarily required.  Level 3 has not produced such evidence.

To the extent that Level 3 argues that the City could hold Level 3 in default under the Ordinance, and thereby prohibit services, the only evidence alluded to by Level 3 is Pl. Exh. 30.  Pl. Exh. 30 is a letter dated January 9, 2004, giving Level 3 notice of potential default for not maintaining the required bond and insurance, and not providing the City with digital copies of maps showing Level 3's occupation of the City's rights-of-way.  *See*, Level 3's Reply In Response To Exhibit A (doc. 61), at 9.  Such requirements are not *per se* prohibitive merely because holding Level 3

---

[10]  The court does not read the Telecommunications Act of 1996 to impose an affirmative duty on municipalities to adopt ordinances regulating the provision of telecommunication services.

in default is a potential remedy available to the City.  Rather, Level 3 must either (1) prove by substantial evidence that such requirements may prohibit or have the effect of prohibiting telecommunication's services, or (2) show that the Ordinance as a whole is facially prohibitory.  Level 3 has failed to provide any such evidence.  In fact, Level 3 has been operating under the challenged Ordinance for more than four years.  This is evidence that, at least as to Level 3, the Ordinance is not prohibitory. Since Level 3 is the only entity regulated by the Ordinance, Level 3 has failed in its burden of proof.

### b.  Specific provisions challenged

### ii.  Sections 2.1, 2.4, and 3(F)

Level 3 challenges two provisions of Section 2, "Grant and General Conditions," and one provision of Section 3, "Representations, Warranties and Covenants."  These challenged provisions are Sections 2.1, 2.4, and 3(F), which read as follows:

2.1  GRANT
A. ...Level 3 agrees that ... it will [not] be providing telecommunications ... services to residents and businesses located in the City pursuant to this Ordinance ....

2.4.  SERVICES NOT AUTHORIZED

This Ordinance is not a franchise, license or right ... to provide telecommunications services to residents or businesses within the City.

      F.     Level 3 warrants and represents that no commercial or retail services are to be provided within the corporate limits of the City.

Contrary to Level 3's assertions, these provisions do not prohibit Level 3 from providing telecommunications services. Rather, they are merely descriptions of the scope of the authorization as applied for by Level 3 and as granted by the Ordinance.

ii. Section 13.A

Section 13 is titled "TRANSFER OF OWNERSHIP." Paragraph A reads as follows:

      A.     The rights and privileges herein granted to Level 3 shall be personal to Level 3. Accordingly, Level 3 shall not sell, transfer, lease, assign, sublet, or dispose of in whole or in part, either by forced or voluntary sale, or by ordinary sale, consolidation, or otherwise, this Agreement or any of the rights or privileges granted by this agreement, without the prior consent of the City. Level 3 shall not transfer, whether by merger, sale, consolidation or otherwise, the control of the Company or of any entity, at any tier or level, which directly or indirectly controls Level 3, without the prior written consent of the City. Level 3 shall comply with any reasonable requests from the City for information relative to any proposed transfer. The City reserves the right to be reimbursed for its reasonable costs relating to the review of a transfer of ownership. The grant or waiver of any one or more of such consents shall not render

15

> unnecessary any subsequent consent, nor shall the grant of
> any such consent constitute a waiver of any other rights of
> the City.

Again, Level 3 does not argue that the criteria set forth in this provision are prohibitory, but rather it "sets forth no criteria by which such a request ... will be judged, and it requires Level 3 to comply with *any* request for information." (Level 3's MSJ brief, at 14.) (Emphasis supplied.) As stated above, this court does not read § 253(a) as mandating that the City adopt an ordinance setting specific criteria, or any ordinance at all. Additionally, Level 3's brief does not acknowledge the self-limiting nature of this provision: requests for information must be "reasonable." Reasonableness, like all other provisions of any local regulation, will be determined by the substantive provision of § 253(a), "Does the information request prohibit or have the effect of prohibiting telecommunications services?" and of § 253(c), "If so, is the request related to the management of public rights-of-way (and therefore 'saved')?"

Level 3 relies on *TCG v. City of White Plains*, 305 F.3d 67 at 81 (2nd Cir. 2002) for authority that Paragraph 3(F) constitutes "oversight of the ownership of Level 3 [that] imposes [sic] the City in the role of regulating the entities that seek to provide telecommunications services in the City and violates Section 253." (Level 3 MSJ brief at 15.) Actually, in *City of White Plains*, the court first found that "[c]ertain

16

provisions ...[,] [i]n particular the provision that gives the Common Council the right to reject any application based on any 'public interest factors ... that are deemed pertinent by the City' ... [and the] extensive delays in processing TCG's request for a franchise ... [caused the court to] conclude that the Ordinance violates § 253(a)." *Id*., at 77. Having reached this conclusion, the Second Circuit's analysis of the transfer "restrictions" was limited to determining whether those provisions were "saved" by § 253(c) as "reasonably related to regulating the use of the rights-of-way." *Id*., at 82. The *White Plains* court stated that a "more limited franchise transfer provision could be reasonably related to regulating the use of the rights-of-way." Here, the Ordinance restricts transfer of the *license* or transfer of *control* of Level 3 without the City's consent. The fact that consent is required necessarily implies that consent can be withheld. Such consent is not limited to "reasonableness" (such as assurance that the fee, bond, and insurance requirements would continue to be met). Additionally, while *notification* of a transfer might be reasonably related to management of rights-of-way (so that the City would know who to contact in the event that further construction were required on the licensee's route), *consent* is not, absent such a limitation to "reasonableness." To restrict *who* can provide telecommunications services to entities that are approved by the City is a facial

violation of § 253(a) and is not, as stated above, saved by § 253(c). Thus, this provision of the Ordinance will be enjoined by the court.[11]

### iii.  Monetary and in-kind fees

Level 3 says (Brief at 15) that the City is limited to recouping its "costs incurred in managing the provider's use of the rights-of-way."   The court does not agree. While *XO Missouri, Inc. v. City of Maryland Heights*, 256 F.Supp.2d 987 at 994 (E.D. Mo. 2003), and the authority it cites, including the FCC, stand for the proposition that <u>any</u> revenue-based fee is a *per se* violation of § 253(a), *Maryland Heights* is not in accord with *Town of Palm Beach*'s requirement that this court <u>first</u> determine whether a regulation prohibits or may have the effect of prohibiting telecommunications services.[12] Additionally, *Maryland Heights*' *per se* analysis was implicitly rejected by *TCG Detroit*. ("A violation of § 253(c) might well *not* involve violating § 253(a); unfair or unreasonable fees need not rise to the level of erecting a barrier to entry." *TCG Detroit*, at 624.) That is, both *Town of Palm Beach* and *TCG Detroit* implicitly reject a *per se* analysis of any alleged violation, and direct the district court to analyze, as a threshold matter, whether the regulation at issue

---

[11]  The Ordinance specifically provides that it is severable.  *See*, Section 9, "Severability."

[12]  The District Court, not the FCC, has jurisdiction over state or local regulations that purport to regulate [the City's] right of way, *Town of Palm Beach*, *supra.*

prohibits or may have the effect of prohibiting telecommunications services.  Only after that analysis is complete does the court perform an analysis under § 253(c) to determine whether the challenged regulation is "saved."

The evidence here is that the Ordinance

(1)  is a negotiated agreement,

(2) is not an ordinance of general application, and

(3) has been in effect for more than four (4) years without any evidence of a prohibitory impact on Level 3.

*Town of Palm Beach* places the burden on Level 3 to <u>show</u> that the monetary and in-kind fees assessed by the Ordinance prohibit or have the effect of prohibiting telecommunications services.  The *Santa Fe*[13] plaintiff produced <u>evidence</u> of the impact or potential impact of the complained-of fees on it; Level 3 has not.  Since the Ordinance is not an ordinance of general application, the court cannot extrapolate such fees to other potential telecommunications service providers.  Even if the court were to so extrapolate, Level 3 has not produced any evidence of the likely impact of these complained-of fees on potential telecommunications providers.  Given Level

---

[13]  *Qwest v. City of Santa Fe*, 380 F.3d 1258 (10th Cir. 2004).

3's failure to meet its evidentiary burden, the court would be speculating if it said the complained-of fees violate § 253(a).

In light of the holding of *Town of Palm Beach*, and its requirement that this court <u>first</u> determine that a subsection (a) violation has occurred, and in the absence of evidence showing the impact of the complained of "regulations", Level 3's Motion for Summary Judgment is due to be DENIED as to all claims, other than the claim relating to restrictions on transfer, arising out of 47 U.S.C. § 253[14], and the City's cross motion as to those claims is due to be GRANTED except as to the claim relating to restrictions on transfer.

B.      The Compensation Is A Tax.

In Count I, Level 3 seeks a declaration that the ordinance's per-linear-foot charge is a tax rather than a fee[15].  Level 3 relies on *Lightwave Technologies v. Escambia County*, 804 So.2d 176 (Ala. 2001).  Although *Lightwave* involved a county regulation rather than a city ordinance, the Alabama Supreme Court's analysis

---

[14] Count I, except to the extent it alternatively is argued to seek a declaration that the fees are a tax; Count II; Count III; Count IV (because a claim for violation of 42 U.S.C. § 1983 cannot survive in the absence of a viable claim of violation of a federal or constitutional right (*See*, Section C., *infra; Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502 (1980)); and Count V.

[15] In its Brief, Level 3 seeks this declaration of status as an alternative to, and only in the event that the court rejects, Level 3's contention that the fees violate § 253(a) and are not saved by § 253(c).  Having rejected Level 3's contentions under § 253, the court now turns to Level 3's alternative, and unrelated, tax theory.

of the distinction between a fee and a tax is equally applicable to these facts.  The
Alabama Supreme Court first looked at the purpose behind the imposition of the per-
linear-foot charge and found that the charge was a tax because its purpose was to
generate revenue.  In this case, as in *Lightwave*, the stated purpose of the annual
charge was "compensation" for rights and privileges, not coverage of costs.  (Pl. Exh.
21 § 8.1(A)).  Second, as in *Lightwave*, the amount of the fee is not "rationally related
to the expected cost of repairing the rights-of-way after the fiber-optic cable has been
installed." *Lightwave*, 804 So.2d at 180.  The City imposed numerous requirements
in the form of a construction bond, insurance, and indemnification, on Level 3 that
assured that the City's actual costs were fully paid by Level 3 <u>in</u> <u>addition</u> <u>to</u> the fee
charged.  Indeed, the City never attempted to calculate its costs of managing Level
3's use of the public rights-of-way, and has no record of any cost incurred as a result
of Level 3's activities since construction was completed in late 2000.  (Level 3's
Statement of Fact ¶¶ 67, 68, admitted in the City's Responsive Statement of Facts ¶¶
67, 68.)  Third, the moneys received were not reserved for use in the City's rights-of-
way management program, indicating that the charge was a tax rather than a fee.  *See*,
*Lightwave*, 804 So.2d at 180.  The court declares that the fee is a tax and will grant
summary judgment on Level 3's behalf in Count One on that theory.

  C.  No Section 1983 Right Has Been Violated.

1.      Absent a violation of a federal or constitutional *right*, no § 1983 claim exists.

A claim for violation of 42 U.S.C. § 1983 cannot survive in the absence of a viable claim of violation of a federal or constitutional right (*See*, *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502 (1980)).  Having found that § 253(a) was violated by the ordinance's restriction on transfer, and that § 253(c)'s safe harbor does not apply, the court turns to whether a § 1983 violation occurred.  For the reasons stated, no § 1983 right of action exists, and therefore no violation occurred.

2.      Section 253 does not create a "right" for purposes of § 1983.

The *Palm Beach* decision addressed two district court decisions, *BellSouth Telecommunications, Inc. v. Town of Palm Beach,* 127 F.Supp.2d 1348 (S.D. Fla., 1999), and *BellSouth Telecommunications, Inc. v. City of Coral Springs*, 42 F.Supp.2d 1304 (S.D. Fla., 1999).   In both of these cases, the plaintiff sought declaratory judgment and injunctive relief only.  No claim was made under § 1983 for damages and attorney fees.  *Palm Beach* held that a district court, rather than the Federal Communications Commission, was the appropriate <u>forum</u> for private causes of action to determine issues relating to local ordinances that purport to regulate telecommunications service providers' access to public rights-of-way.  Therefore, the

22

question whether § 253 (a) of the Telecommunications Act of 1996 creates a private right of action under § 1983 is a question of first impression in this circuit.

The Plaintiff states that "the Eleventh Circuit has . . . held that the Communications Act creates rights that are subject to 1983 remedies. *AT&T Wireless DCS, Inv. v. City of Atlanta*, 210 F.3d 1322 (11th Cir. 2000), vacated on other grounds, 260 F.3d 1320 (11th Cir. 2001)."   In fact, the panel decision in *City of Atlanta* was vacated <u>generally</u>.   *See*, *City of Atlanta* 260 F.3d 1320.   "An opinion vacated on rehearing . . . is not binding precedent."   *Ierna v. Arthur Murray Intern., Inc.*, 833 F.2d 1472, 1475 n. 4 (11th Cir. 1987).   "A vacated judgment leaves the case as if no  decision had been entered."   *United States v. Michael*, 645 F.2d 252, 255 n. 2 (5th Cir. 1981).

Section 1983 historically provided remedies for violations of constitutional rights, but the Supreme Court has held that plaintiffs may also use the statute to remedy violations of rights arising under federal statutes.   *See Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (holding, "[T]he § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law.") However, not all violations of federal statutes create a cause of action under § 1983.   A § 1983 claim arises only if the federal statute creates *rights* enforceable under § 1983.   "In order to create a federal right, Congress must clearly manifest its intent to do so. *Gonzaga Univ. v.*

23

*Doe*, 536 U.S. 273, 280 . . . (2002).  The question whether Congress intended to create a federal right is [definitively] answered in the negative where a statute 'grants no private rights to any identifiable class.'  *Gonzaga*, 536 U.S. at 284 . . ."  *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1265 (10th Cir. 2004).  This court agrees with the Tenth Circuit, which held, in *City of Santa Fe*, that "nothing in the text or structure of § 253 indicates an intention to create a private right."  *Id.*

The Tenth Circuit's reasoning in *City of Santa Fe* is persuasive: "the language of the statute is not focused on the benefits granted to telecommunications providers. Instead the statute focuses on restricting the type of telecommunications regulations a local authority may enforce.  Section 253 contains nothing analogous to the language of the right creating statutes noted by the Supreme Court [in *Gonzaga*]." *Id.*

> [T]he legislative history indicates that some senators[16] were concerned about where *preemption*[17] challenges based on § 253 would be decided, not that Congress intended to create a right of action.  A federal statutory right or right of action is not required where a party seeks to enjoin the enforcement of a regulation on the grounds that the local ordinance is preempted by federal law. [citations omitted].  'A party may bring a claim under the Supremacy Clause that simply asserts

---

[16]As the Eleventh Circuit noted in *Palm Beach*, "[a]nalysis of the statutory language creates more questions than it answers about what causes of action Congress intended to create . . ."  252 F.3d 1169 at 1189.

[17]Emphasis in original.

that a federal statute has taken away local authority to regulate a certain activity.  In contrast, an implied private right of action is a means of enforcing the substantive provisions of a federal law.'  *Western Air Lines, Inc.*, 817 F.2d at 225 (2d Cir. 1987).  The 'mere coincidence' that the federal statute, here § 253, contains preemption language does not affect that distinction.  *Id*. at 226.

*Qwest Corp. v. City of Santa Fe*, 380 F.3d at 1266 (emphasis in original).

Neither "the structure of the Act [nor] the legislative history . . . reveal a clear congressional intent to create an individual right which can support a § 1983 claim." *Id* at 1265.  As explained by the Eleventh Circuit,

in *Gonzaga*, the [Supreme] Court pointed out that some courts had misunderstood the first factor of *Blessing* to permit a conferred '*benefit*' rather than 'anything short of an unambiguously conferred *right* to support a cause of action brought under § 1983[,] ... [which] provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States [citation omitted].

*Schwier v. Cox*, 340 F.3d 1284,1290-91 (11th Cir. 2003).   Unlike the statutory provision examined in *Schwier*, the language of § 253 is *not* "analogous to language cited by the Supreme Court in *Gonzaga* as 'explicit 'right- or duty-creating language'".  *Id*., at 291.  "'Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of person' [citation omitted].'"  *Id*., at 287.  Here, the statue focuses on the person regulated ("No State or local statute or regulation," 47 U.S.C. § 253 (a);

"the ability of a State" 47 U.S.C. § 253(b); "the authority of a State or local government" 47 U.S.C. § 253 (c)), not the protection of entity(ies).

Accordingly, Level 3 has no viable claim under 42 U.S.C. § 1983. *See*, *City of Santa Fe*, 380 F.3d at 1265 ("The question is whether Congress intended to create a federal right is answered in the negative where a statute 'grants no private rights to any identifiable class.' *Gonzaga*, 536 U.S. at 284 . . . .") "'The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries' [citation omitted]." *Gonzaga*, 536 U.S. at 286.

Summary judgment on Level 3's 1983 § claim is due to be entered in favor of the City and against Level 3.

D.     The interplead funds are due to be disbursed to the City.

The court having found that the per-linear-foot fees assessed against Level 3 are not a violation of § 253(a), the funds are due to be disbursed to the City.

A separate order will be entered.

**DONE** this 17th day of May, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

26