IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 02-VEH-2055-NE ) |
| CITY OF HUNTSVILLE, ALABAMA, a municipal corporation, | ) ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO ALTER OR AMEND**

Pursuant to this Court's Order dated June 2, 2005, Plaintiff Level 3 Communications, LLC ("Level 3") hereby opposes Defendant City of Huntsville's ("City") Motion To Alter Or Amend ("Motion"). As demonstrated below, the City's Motion is procedurally and substantively without merit and should be denied.

I. THE CITY'S MOTION IS PROCEDURALLY INFIRM

The City relies on Fed. R. Civ. P. 59(e) as its basis for asking this Court to alter or amend its existing judgment. However, the City's only ground for the Motion is its insistence that the Court's legal conclusion is "incorrect" (City's Motion at p. 2), and that its findings on summary judgment are contrary to the evidence already entered into the record (City's Motion at pp. 8-9).

In the Eleventh Circuit and other federal jurisdictions, aggrieved parties "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington,* No. 04-

14759, 2005 U.S. App. LEXIS 7907, at *13 (11th Cir. May 6, 2005) (a copy is attached hereto) (citing *Stone v. Wall,* 135 F.3d 1438, 1442 (11th Cir. 1998)). In *Michael Linet,* for example, the Court of Appeals upheld the district court's denial of a Rule 59(e) motion where the movant merely "disagreed with the district court's treatment of certain facts and its legal conclusions," because the motion "was essentially a motion to reconsider the district court's prior summary judgment order," and therefore properly denied by the district court on a motion to amend or alter its judgment. 2005 U.S. App. LEXIS 7907, at *12-*13.

Nevertheless, this is precisely what the City does here: asks the Court to reconsider an argument already raised and evidence already entered into the record. First, the City's Motion raises no new legal argument. In its summary judgment submissions, the City argued that *Lightwave* is not applicable to this case, and that Alabama Constitution, Art. XII, § 220 and Alabama Code § 11-43-62 grant it authority to demand franchise fee payments. (*See* Def. Initial Br. at 3-4; Def. Opp. Br. at 11). The City's current Motion merely seeks to reargue those same points, but with a few additional citations (all of which were available to the City at the time). The City's reargument of previously litigated points, however, is not appropriate grounds under Rule 59: "The purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed." *Stone,* 135 F.3d at 1442. The City's string citation to sources that it declined to cite in its earlier briefing does not alter the premise of its argument. Second, the City offers no new evidence to the Court, but instead tries to relitigate the case based on the *existing* record. (City's Motion at p. 8 (arguing that "[t]he record . . . establishes that the ROW use fee paid to the [City] by Level 3 was reserved for use in the [City's] rights-of-way management program") (emphasis omitted).) Once again, the City's efforts to relitigate the case under the

2

guise of a Rule 59 motion are not permitted under the law of this Circuit. *See Michael Linet,* 2005 U.S. App. LEXIS 7907, at *13.

The City's Motion is, in effect, an effort to short-circuit the Federal Rules of Appellate Procedure and argue what is essentially an "appeal" to the trial court. Because the motion is procedurally unsupportable under Rule 59(e) or any other Federal Rule of Civil Procedure, the Court should reject the City's Motion, and decline to "alter" its judgment on this point.

## II.    THE CITY'S MOTION IS SUBSTANTIVELY MERITLESS

As in its summary judgment briefs, in its Motion, the City once again asserts that the Alabama Supreme Court's decision in *Lightwave Technologies v. Escambia County*, 804 So.2d 176 (Ala. 2001), does not apply to the City. The City's strained reasoning again seeks to distinguish *Lightwave* based on the fact that the defendant in that case was a county and not a city. The City also then reverses the appropriate analytical order, asserting that the Alabama Supreme Court's holding that the fee was a tax depended entirely on the issue of whether Escambia County had authority to impose a compensation requirement on telecommunications providers in the first place. Finally, the City asserts that it is authorized by the Alabama Constitution and Code to require "rental" payments from telecommunications providers as part of granting a "franchise", and therefore, the City's compensation requirements on Level 3 cannot be a tax. As demonstrated below, there is no basis for any of the City's assertions.

### A.    The Court Correctly Held That *Lightwave* Provides The Applicable Framework For Determining That The City's Compensation Requirements Are A Tax

The City's attempt to distinguish *Lightwave* is strained and circular. First, there is nothing in the text of *Lightwave* that suggests that the analysis of whether an imposition constitutes a tax differs depending on whether the local government entity is a city or county.

3

Whether a payment requirement is a "tax" or a "fee" is a question that is not limited by the form of local government.

Second, contrary to the City's assertion, nothing in *Lightwave* indicates that the classification of the compensation requirement as fee or tax would follow *after* the determination of whether the local government has the authority to impose it. The City's backward argument is fundamentally that the Alabama Supreme Court first determined that Escambia County had no authority to impose a fee on use of the right-of-way, and only then asked whether the imposition was a tax or fee. (Motion at 3). That simply makes no sense. Before a court can determine whether a local government, be it county or city, can impose a particular monetary payment requirement, it has to classify that requirement. Is it a "tax," unrelated to the local government's cost of managing the activity and used from general revenue development? Or, is it a "fee," directed at recouping specific costs incurred as part of regulating an activity? This analytical question has to come before, not after, the question of whether the government has authority to impose it.

Ultimately, there is nothing in *Lightwave* that supports the City's assertion that "if the county's authority in Lightwave had been broad enough to allow it to charge a rights-of-way use fee for revenue-generating purposes, the 'tax' issue never would have come into play and the outcome would have been quite different because the charge would have been deemed a permissible regulation." (Motion at 4).

Similarly, there is nothing in *Lightwave* that suggests, as the City asserts, that the Alabama Supreme Court's analysis did *not* recite and apply general factors for determining whether a charge is a tax. To the contrary, the factors used by the Alabama Supreme Court are consistent with other cases identifying the general factors for determining whether a municipal

4

charge is a fee or tax. *See, e.g., BellSouth Tel. Inc. v. City of Memphis*, 2004 Tenn. App. LEXIS 442, *40-*43 (Tenn. Ct. App. July 12, 2004)(municipal telecom fee held to be a tax); *City of Chattanooga v. Bellsouth Tel., Inc.*, 2000 Tenn. App. LEXIS 32 (Tenn. Ct. App. 2000) (same); 16 Eugene McQuillin, The Law Of Municipal Corporations, § 44.02 (2003 Revised Vol.) ("what a tax really is, is determined from its nature and not its name"). The Alabama Supreme Court applied well-established, general factors for evaluating whether an imposition is a tax.

> B. **Alabama Cities Do Not Have Authority To Require Franchise Rental Payments For Use Of The Public Rights-Of-Way By Telecommunications Providers**

The bulk of the City's Motion is devoted to asserting that Alabama cities are authorized by the Alabama Constitution and Code to require telecommunications providers to pay "rent" for use of the public rights-of-way. The City's arguments are without merit.

The City primarily relies for authority on Alabama Constitution, Article XII, Section 220 and Alabama Code § 11-43-62. (Motion at 4-5). However, the City ignores the text of the provisions and the Alabama Supreme Court case cited during oral argument by counsel for Level 3, which contradict the City's assertion and cited cases.

Section 11-43-62 provides, in pertinent part, that a City "may sell or lease in such manner as it may deem advisable any *franchise which it has power to grant*, and the moneys received therefore shall be paid into the city treasury." Ala. Code § 11-43-62 (emphasis added). Thus, the issue is what "franchise" does the City have the power to grant. The City asserts that Article XII, Section 220 of the Alabama Constitution empowers it to grant a franchise to telecommunications providers. However, that is where the City's position is incorrect, and its entire argument crumbles.

Article XII, Section 220 of the Alabama Constitution provides that

5

> No person, firm, association, or corporation shall be authorized or permitted to use the streets, avenues, alleys, or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining *the consent* of the proper authorities of such city, town, or village.

Ala. Const. Art. XII, § 220 (emphasis added). However, this provision does not support the City's position.

The Supreme Court of Alabama, in 1988, specifically held that Section 220 does *not* empower cities to grant franchises to utilities, such as telecommunications providers, like Level 3, holding certificates of public convenience and necessity from the Alabama Public Service Commission. *Alabama Power Co. v. State*, 527 So. 2d 678, 687 (Ala. 1988) (citing *Phenix City v. Alabama Power Co.*, 195 So. 894 (Ala. 1940)). In *Alabama Power*, the Court held that the power to franchise utilities belongs to the State, and Section 220 did not delegate that power to cities. *Id.* at 683-85. Rather, the "consent" language of Section 220 merely allows cities to exercise a veto power to control the placement of specific items in the streets.[1] *Id.* at 685.

In the case of telecommunications providers, the fact that franchising is reserved to the State is particularly true. Pursuant to Alabama Code § 37-2-4, the Alabama Public Service Commission ("PSC") is empowered to issue Certificates Of Public Convenience And Necessity ("CPCN"), which are a prerequisite to providing telecommunications services in the State (*i.e.*, the PSC is the arm of the State that grants the "franchise" to operate in the State). It is undisputed in this case that Level 3 has received a CPCN from the PSC. (Pl. Exh. 2). Thus, the State has already granted Level 3 a franchise, and the City does not have the power to grant

---

[1] Level 3 notes that to the extent such "veto" power were interpreted as permitting a city to reject a telecommunications provider's construction altogether, it would be preempted by Section 253 of the Telecommunications Act, 47 U.S.C. § 253 (as described in detail in Level 3's summary judgment submissions). As such, the "veto" power must be read as simply a manner of expressing the reservation of a city's general right-of-way management and zoning authority.

6

Level 3 a "franchise," under Alabama law. Accordingly, the City cannot "sell or lease" such a franchise to Level 3, and cannot require compensation under Alabama Code § 11-43-62.

The City incorrectly asserts that Alabama Code § 11-43-62 is, itself, the source of its franchise power. That interpretation – in addition to being in conflict with *Alabama Power*'s holding that cities have not been delegated the power to grant franchises – ignores the plain language of the statute. Section 11-43-62 does not supply the power to issue franchises, but rather says what the City may do regarding any franchise that it otherwise "has power to grant." Thus, Section 11-43-62 assumes on its face that the franchise power must come from elsewhere, and as demonstrated above, such power has not been granted in this case.

The first paragraph of Alabama Code § 11-43-62 also is not the source of any franchise power. The initial paragraph of the Section delegates the power to "regulate the use of the streets . . . and generally to control and regulate the use of the streets for any and all purposes." Ala. Code § 11-43-62. In that respect, it grants even less authority than Section 220 of the Alabama Constitution, which may grant as much as a "veto" power over what may be placed in the streets (but not the power to grant franchises). *See Alabama Power*, 527 So. 2d at 684-85, 687. Ultimately, both Article XII, Section 220 of the Constitution and the first paragraph of Alabama Code § 11-43-62 clearly reserve only traditional authority to manage issues related to the physical occupation of public rights-of-way (*i.e.*, time, place, and manner of construction issues) – not the power to grant franchises or impose fees on telecommunications companies.

The cases cited by the City also do not support its broad assertion of franchise "selling" authority over telecommunications providers. All of the "franchising" cases cited by the City involved franchises granted to non-public utilities – *i.e.*, entities that the State had not reserved the authority to franchise itself, and therefore are not applicable to the question as applied to

7

Level 3. *Operation New Birmingham v. Flynn*, 621 So. 2d 1316 (Ala. 1993) (franchising of sidewalk hot dog vendors); *Crabtree v. City of Birmingham*, 299 So. 2d 282 (Ala. 1974) (franchising of wrecker service); *Bowman v. City of Birmingham*, 280 F.2d 531 (5th Cir. 1960) (franchising of buses). Indeed, in *Bowman*, the Fifth Circuit noted that "[i]n construing the effect of a grant it must not be forgotten that it is in the nature of a privilege thus extended as well as the regulation of a business *in which the grantee has no right otherwise to engage.*" 280 F.2d at 535 (emphasis added). In this case, consistent with *Alabama Power*, Level 3 already does have a right to otherwise engage in the provision of telecommunications services pursuant to the PSC's CPCN grant and regulation. The City of Huntsville, while it may have the authority to grant franchises to trash trucks and hot dog vendors, does not have such authority over telecommunications providers holding CPCNs from the State, like Level 3.

The Attorney General's Opinions cited by the City are similarly inapposite. For example, 246 Ala. Op. Atty. Gen. 31, 1997 WL 1053999 (1997), opined that a city could impose a "gross receipts privilege tax" on a municipal gas company. Municipal gas companies are not regulated by and do not receive CPCNs from the PSC. Ala. Code § 37-1-34 ("Nothing contained in this title shall be deemed to confer upon the commission the power and jurisdiction to regulate and supervise any utility owned and operated by any municipal corporation in the state"). Similarly, the other Attorney General's Opinions cited, 218 Ala. Op. Atty.Gen. 38, 1990 WL 484350 (1990), Ala.Op.Atty.Gen. 20, 1985 WL 69069 (1985), and Ala.Op.Atty.Gen. 81-00244 (1981) concerned franchising cable television operators. Cable television operators do not require CPCNs from the PSC, *see* "An Introduction to the Alabama Public Service Commission," *available at* <http://www.psc.state.al.us/news/1999%20psc%20info.htm> (stating that "the PSC does not regulate . . . cable television systems"). Moreover, cable television providers are

required to obtain local franchises under a specific federal statute. 47 U.S.C. § 541(a)(1) & (b)(1). Finally, 194 Ala.Op.Atty.Gen. 25, 1983 WL 41915 (1983), concerned franchising of garbage removal. Like the cases cited by Huntsville, all of the Attorney General's Opinions are both distinguishable from and consistent with the holding of *Alabama Power* in that they concern franchising of entities that are not already granted the right to do business (*i.e.*, franchised) by the State. The City has not cited any authority that supports the proposition that the Alabama Constitution or Alabama Code grant it authority to "sell" franchises to telecommunications providers. Thus, even if its strained interpretation of *Lightwave* were followed, the City would still not have the inherent authority to "sell" a "franchise" to Level 3 for use of the public rights-of-way, and the issue would remain – is the City's compensation requirement a "tax."

### C. The Court Correctly Concluded That The Record Evidence Established That The City Has Not Reserved The Payments From Level 3 For Right-Of-Way Management

The City finally takes issue with the Court's holding under the third *Lightwave* factor that the City's "fee" imposition on Level 3 has not been reserved for use in managing Level 3's use of the public rights-of-way. (Motion at 8). In support of this factual argument, the City cites to the Ordinance and to deposition testimony of the City's Director of Finance. The City's assertions ignore the undisputed record facts and do not support its point.

First, Level 3's Statement Of Material Facts, paragraphs 76 through 79, stated as follows:

"76.  From the date of enactment of the Ordinance to this date, the City has not adopted a "rights-of-way management program." (Byrge Dep. 55:2-56:5; Cunningham Dep. 62:12-63:4).

77.  In addition, the City has failed to create a separate account to track any monies received from Level 3 for such "rights-of-way management program." (Taylor Dep. 68:18-22, 76:21-77:1).

78.  The monies received from Level 3 have been placed in the City's General Fund. (Taylor Dep. 68:18-22, 76:21-77:1; Anderson Dep. 182:10-184:17; Def. Ans. to First Set Interrog. p. 23).

79.  The monies received for Level 3 are unreserved and undesignated in the City's financial books. (Taylor Dep. 68:18-22)."

(Movant's Statement Of Facts In Response To Exhibit A Of The Court's Order, ¶¶ 76-79). The City admitted each of those statements. (Opponent's Responsive Statement Of Facts at 6, ¶¶ 76-79). As such, they are taken as true, and the City cannot dispute them. In addition, the City admitted that the City did not track expenses specific to the evaluation of Level 3's application, and City employees did not and do not track their time or costs related to Level 3's use of the rights-of-way or related to rights-of-way management for any telecommunications provider. (Level 3 Statement of facts ¶¶ 72, 74; City's Responsive Statement Of Facts ¶¶ 72, 74).

Yet, the City now asserts that the City's Finance Director, Mr. Taylor tried to cover the City's theory by asserting that the money received from Level 3 has not been spent. (Motion at 8). In reality, however, that assertion is not credible in light of Mr. Taylor's and the City's admissions that the City has not created a separate account to track the money received from Level 3, that the money has been placed in the City's General Fund, and that the money, by being placed in the General Fund, is unreserved and undesignated. The money has, by the City's own admission, been co-mingled with all of the other general funds. It is impossible, once that occurs, to distinguish how the money from Level 3 has been spent, or not spent. Accordingly, the Court was correct in its conclusion on this point.

**CONCLUSION**

The City's Motion to Alter or Amend in part is procedurally and substantively without merit and should be denied.

Respectfully Submitted,

_____
*Mark White (by TST)*

Mark White
**White, Arnold, Andrews & Dowd, PC**
2025 3rd Avenue North
Suite 600
Birmingham, AL 35203
(205) 323-1888

_____
*T. Scott Thompson (signature)*

T. Scott Thompson
**Cole, Raywid & Braverman, LLP**
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 659-9750

Attorneys for Plaintiff
Level 3 Communications, LLC

June 13, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Michael Fees
C. Gregory Burgess
Fees & Burgess, P.C.
213 Green Street
Huntsville, AL  35801

Sam C. Pointer, Jr.
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203

_____
T. Scott Thompson

LEXSEE 2005 U.S. APP. LEXIS 7907

MICHAEL LINET, INC., a Florida corporation, Plaintiff-Appellant, versus THE VILLAGE OF WELLINGTON, FLORIDA, Defendant-Appellee.

No. 04-14759 Non-Argument Calendar

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

2005 U.S. App. LEXIS 7907; 18 Fla. L. Weekly Fed. C 501

May 6, 2005, Decided
May 6, 2005, Filed

**PRIOR HISTORY:** [*1] Appeal from the United States District Court for the Southern District of Florida. D. C. Docket No. 03-80856-CV-DMM.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant village rejected plaintiff's application to build a cell phone site in a residential community. Plaintiff sued the village, alleging violations of the Telecommunications Act of 1996, 47 U.S.C.S. § 332, and 42 U.S.C.S. § 1983. The U.S. District Court for the Southern District of Florida dismissed the § 1983 claim, and after plaintiff added a state due process claim, granted the village's motion for summary judgment. Plaintiff appealed.

**OVERVIEW:** The district court correctly concluded that a violation of the Telecommunications Act did not give rise to an action under 42 U.S.C.S. § 1983 because there were express private remedies in the Telecommunications Act, and Congress did not intend that remedy to coexist with an alternative remedy available in a 42 U.S.C.S. § 1983 action. Also, the district court held correctly that the village's decision to deny the permit was based on substantial evidence, as the village heard objections from residents and a realtor concerning the cell site's negative impact on real estate values, and testimony that the proposed site was unnecessarily close to a local middle school. Additionally, the district court correctly dismissed plaintiff's state law due process claim because, pursuant to 28 U.S.C.S. § 1367(c)(3), the district court could decline to exercise supplemental jurisdiction over that claim once the Telecommunications Act claim was dismissed. Finally, plaintiff could not use a Fed. R. Civ. P. 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.

**OUTCOME:** The judgment of the district court was affirmed.

**CORE TERMS:** site, Telecommunications Act, resident, pole, cell, substantial evidence, telecommunication, provider, phone, correctly, cellular phone, aesthetic, wireless, customer, cellular, mobile, functionally equivalent, unreasonably, property values, realtor, statute of limitations, summary judgment, state law, discriminating, billion, phone service, local zoning, golf course, network, tower

**LexisNexis(R) Headnotes**

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Civil Procedure > Summary Judgment > Standards of Review*
[HN1] Appellate courts review de novo a district court's order granting a motion for summary judgment and construe all reasonable doubts about the facts in favor of the nonmovant.

*Administrative Law > Judicial Review > Standards of Review > De Novo Review*
*Real & Personal Property Law > Zoning & Land Use > Judicial Review*

[HN2] Appellate courts review de novo a district court's determination that a local zoning board's decision was supported by substantial evidence.

*Communications Law > Federal Acts > Telecommunications Act*
*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Protected Rights*
[HN3] 42 U.S.C.S. § 1983 does not provide an avenue for relief every time a state actor violates federal law. There are express private remedies in the Telecommunications Act, 47 U.S.C.S. § 332(c)(7), and Congress did not intend this remedy to coexist with an alternative remedy available in a 42 U.S.C.S. § 1983 action.

*Communications Law > Federal Acts > Telecommunications Act*
[HN4] The Telecommunications Act of 1996, 47 U.S.C.S. § 332, deregulated various aspects of the wireless phone industry.

*Communications Law > Federal Acts > Telecommunications Act*
[HN5] The Telecommunications Act of 1996 preserved limited authority of state and local governments to regulate the location, construction, and modification of wireless telecommunication facilities. This authority has enabled the states and localities to affect both the level of competition and the quality of mobile phone calls. The Act however prevents local government from, among other things, unreasonably discriminating among providers of functionally equivalent services or denying requests for authorization to locate wireless facilities without issuing a written decision supported by substantial evidence. 47 U.S.C.S. § 332(c)(7)(B).

*Communications Law > Federal Acts > Telecommunications Act*
[HN6] A blanket aesthetic objection does not constitute substantial evidence under 47 U.S.C.S. § 332. Such a standard would eviscerate the substantial evidence requirement and unnecessarily retard mobile phone service development. Aesthetic objections coupled with evidence of an adverse impact on property values or safety concerns can constitute substantial evidence. Also relevant is whether the company can reasonably place a cell site in an alternative location and eliminate the residents' concerns.

*Administrative Law > Judicial Review > Standards of Review > Substantial Evidence Review*
*Communications Law > Federal Acts > Telecommunications Act*

[HN7] In the context of the Telecommunications Act of 1996, the "substantial evidence" standard is the traditional substantial evidence standard used by courts to review agency decisions. It requires more than a mere scintilla but less than a preponderance.

*Communications Law > Federal Acts > Telecommunications Act*
*Evidence > Procedural Considerations > Burdens of Proof*
[HN8] In the context of the Telecommunications Act of 1996, the plaintiff has the burden of proving defendant's decision was not supported by substantial evidence.

*Communications Law > Federal Acts > Telecommunications Act*
[HN9] Nothing in the Telecommunications Act precludes a zoning board from reasonably discriminating between two telecommunications providers. 47 U.S.C.S. § 332(c)(7)(B)(i)(I).

*Communications Law > Federal Acts > Telecommunications Act*
[HN10] The Telecommunications Act of 1996 explicitly contemplates that some discrimination among providers of functionally equivalent services' is allowed. Only unreasonable discrimination is illegal. 47 U.S.C.S. § 332(c)(7)(B)(i)(I).

*Communications Law > Federal Acts > Telecommunications Act*
[HN11] In the context of the Telecommunications Act of 1996, the phrase unreasonably discriminate among providers of functionally equivalent services was intended to provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services.

*Civil Procedure > Relief From Judgment > Motions to Alter & Amend*
[HN12] A party cannot use a Fed. R. Civ. P. 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.

**COUNSEL:** For Michael Linet, Inc., Plaintiff-Appellant: Perry M. Adair, Becker & Poliakoff, P.A., CORAL GABLES, FL.

For Village of Wellington, Defendant-Appellee: George P. Roberts, Jr., Roberts, Reynolds, Bedard & Tuzzio, P.A., West Palm Beach, FL.

**JUDGES:** Before HULL, WILSON and GODBOLD, Circuit Judges.

**OPINIONBY:** GODBOLD

**OPINION:** GODBOLD, Circuit Judge:

This case involves the intersection of the Telecommunications Act of 1996 and local zoning interests. The central issue in this case is whether a local zoning board improperly rejected the application of a wireless agent to build a cell phone site on a golf course within a residential community. The district court held it did not. We agree.

The Village of Wellington is a municipal corporation and a residential community in Palm Beach County, Florida. The Village's Planning, Zoning and Building Department oversees land development and planning issues within the community including the construction of cellular phone sites. Michael Linet, Inc. is a Florida corporation that serves as an agent to various cellular phone [*2] service providers. Linet had a contract with Metro PCS, Inc., a cellular phone company, to identify and oversee the construction of a cellular phone site within the Village of Wellington.

These cellular sites are integral to the operation of Metro PCS' mobile phone service network. See Government Accountability Office Report No. 03-501, FCC Should Include Call Quality in Its Annual Report on Competition in Mobile Phone Services, 5 (Apr. 2003) available at http://www.gao.gov/new.items/d03501.pdf (last referenced Apr. 25, 2005) ("GAO Report"). For the network to function Metro must place cellular phone sites in a honey-combed type pattern. See id. Cell sites consist of an antenna mounted to a pole or other structure. Id. The sites relay the low power signals emitted by the handsets that consumers carry back to the cell site which ultimately routes them to another mobile phone or a traditional wire-line telephone. Id. The success or failure of Metro PCS's mobile phone service network is directly tied to its ability to construct cell sites so that its customers are able to utilize their handsets. See id. Cell phone companies market themselves in part on the ability [*3] of customers to utilize their phones in various geographic regions. See id. at 9 Indeed, "most customers sign contracts that specify a geographically based rate plan and the size of the block of minutes the customer is buying for a flat monthly fee." Id.

Linet identified the Village's Golf and Country Club as an ideal site and proposed building a 120 foot flagpole with a cellular communications antenna concealed inside. Because the height of the pole exceeded 60 feet, Linet was required to obtain approval from the Village before constructing the pole. Linet's proposal was not well received by the Village's residents. After a hearing reviewing the merits of Linet's application, the Village, based on objections by the residents, refused to issue a permit to construct the pole. The residents' primary concern, voiced at a June 2003 meeting, was the impact the pole would have on the value of their property. Residents testified that they would not have purchased their homes if the pole was present and a local realtor testified the pole would adversely impact home resale values. Other ancillary concerns included the impact the pole might have on nearby non-commercial air traffic [*4] and the pole's proximity to a middle school.

Linet argues that these objections amount to an impermissible pure aesthetic or "not in my back yard" objection. He maintains that the only factually based testimony was provided by two non-residents. The first, an executive director of another telecommunications facility that had constructed a similar cell site after resident opposition, testified that the pole would not adversely impact property values. The second, a real estate appraisal executive, provided similar testimony based on a study involving condominium sales in Boca Raton, Florida. Linet also complained that another 150-foot telecommunications structure was constructed on a different site within the Village.

After the permit request was denied Linet sued the Village in federal court alleging violations of the Telecommunications Act of 1996, 47 U.S.C. § 332, and 42 U.S.C. § 1983. The district court dismissed the § 1983 claim, holding that Linet was limited to his cause of action under the Telecommunication Act because it provided a comprehensive statutory scheme to redress his grievance. Afterwards Linet amended his complaint [*5] to add a state due process claim. The district court granted summary judgment on this claim and the Telecommunications Act claim, holding that the Village did not violate the Telecommunications Act and that the statute of limitations on Linet's due process claim had expired. This appeal followed. Linet argues on appeal that (1) a violation of the Telecommunications Act can give rise to a § 1983 claim, (2) the Village's denial of the cellular site permit application was not supported by substantial evidence as required by the Telecommunications Act, (3) the Village violated the Telecommunications Act by unreasonably discriminating against Linet by allowing another cellular provider to build a different structure on another site, (4) the state law due process claim was not barred by the statute of limitations, and (5) the district court improperly denied Line's motion to alter or amend the final judgment. We affirm.

[HN1] We review *de novo* a district court's order granting a motion for summary judgment and construe "all reasonable doubts about the facts in favor of the

nonmovant." Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990). [HN2] We also review de novo the [*6] district court's determination that the local zoning board's decision was supported by substantial evidence. Am. Tower LP v. City of Huntsville, 295 F.3d 1203, 1207 (11th Cir. 2002)

Section 1983 claim.

The district court correctly concluded that a violation of the Telecommunications Act does not give rise to an action under 42 U.S.C. § 1983. The Supreme Court addressed this precise issue while this appeal was pending in City of Rancho Palos Verdes, Cal. v. Abrams, ___ U.S. ___, 125 S. Ct. 1453, 161 L. Ed. 2d. 316 (2005). The Court noted that [HN3] " § 1983 does not provide an avenue for relief every time a state actor violates federal law." Id. 125 S. Ct. at 1458. After identifying the express private remedy in the Telecommunications Act, § 332(c)(7), the Court concluded that Congress did not intend this remedy to coexist with an alternative remedy available in a § 1983 action. Id. This holding dooms Linet's first argument on appeal.

Telecommunications Act claims

[HN4] The Telecommunications Act of 1996, 47 U.S.C. § 332, deregulated various aspects of the wireless phone industry. [*7] The Act was meant to promote competition and higher quality in American telecommunications services and "to encourage the rapid deployment of new telecommunications technologies." Id. 125 S. Ct. at 1455. The wireless phone industry has grown dramatically in the wake of the Act with customer minutes used per month increasing 900% from 1997 (5.5 billion) to 2002 (55.5 billion). GAO Report at 8. Revenues have also grown exponentially from $ 482 million in 1985 to $ 76 billion in 2002. Id.

[HN5] The Act preserved limited authority of state and local governments to regulate the location, construction, and modification of wireless telecommunication facilities. See Ranchos Palos Verdes, 125 S. Ct. at 1455. This authority "has enabled the states and localities to affect both the level of competition and the quality of mobile phone calls." GAO Report at 14. The Act however prevents local government from, among other things, "unreasonably discriminating" among providers of functionally equivalent services or denying requests for authorization to locate wireless facilities without issuing a written decision "supported by substantial evidence." 47 U.S.C. § 332 (c)(7)(B). [*8]

Our cases highlight that a common objection residents have to the construction of a cell site is that it detracts from the aesthetic appeal of the community. See, e.g., Am. Tower, 295 F.3d at 1208; Preferred Sites, LLC v. Troup County, 296 F.3d 1210 (11th Cir. 2002). [HN6] A blanket aesthetic objection does not constitute substantial evidence under § 332. See Preferred Sites, 296 F.3d at 1219. Such a standard would eviscerate the substantial evidence requirement and unnecessarily retard mobile phone service development. Aesthetic objections coupled with evidence of an adverse impact on property values or safety concerns can constitute substantial evidence. See Am. Tower, 295 F.3d at 1208-9 (holding that testimony by residents and realtor on negative impact on property values along with safety concerns because of proximity to a school constituted substantial evidence sufficient to reject construction application). Also relevant is whether the company can reasonably place a cell site in an alternative location and eliminate the residents' concerns. See PrimeCo Pers. Communications, Ltd. P'ship. v. City of Mequon, 352 F.3d 1147, 1151 (7th Cir. 2003). [*9]

The district court held correctly that the Village's decision to deny Linet's permit was based on substantial evidence received at the June 2003 hearing. We have held that [HN7] the "substantial evidence" standard is the traditional substantial evidence standard used by courts to review agency decisions. Am. Tower, 295 F.3d at 1207. "It requires more than a mere scintilla but less than a preponderance." Id. (internal citation omitted). [HN8] Linet has the burden of proving the Village's decision was not supported by substantial evidence. Id.

The Village met this standard. It heard objections from residents and a realtor concerning the cell site's negative impact on real estate values. The Village also heard testimony that the proposed site was unnecessarily close to a local middle school. Under our case law this testimony was sufficient to support the board's determination. Linet's expert testimony contradicting the adverse property value impact concerns was provided by a telecommunications executive who placed a tower in a different part of the community and a realtor who based his knowledge on condominium sales in a different county. This does not change our conclusion. [*10] The residents were worried about the impact of this tower on the golf course within their community, not a different tower, different location, or different community. Linet also failed to show that an alternative location was unavailable or unfeasible.

Linet's unlawful discrimination argument is equally unconvincing. [HN9] Nothing in the Telecommunications Act precludes the Village from reasonably discriminating between two telecommunications providers. See 47 U.S.C. § 332(c)(7)(B)(i)(I). Indeed [HN10] the Telecommunications Act "explicitly contemplates that some discrimination 'among providers of functionally equivalent services' is allowed." AT&T Wireless PCS,

Inc. v. City Council of City of Va. Beach, 155 F.3d 423, 427 (4th Cir. 1998). Only unreasonable discrimination is illegal. See 47 U.S.C. § 332(c)(7)(B)(i)(I).

[HN11] The phrase "unreasonably discriminate among providers of functionally equivalent services" was intended to provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements [*11] even if those facilities provide functionally equivalent services. H.R. Conf. No. 104-458, at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 222. Linet has not shown that he was precluded from proposing an alternative cell site and did not present any evidence that an alternative site would adversely effect Metro PCS' cellular coverage. Moreover the alternative site utilized by the other provider may have had less of an impact or no impact on property values or otherwise not raised the same concerns as the golf course site proposed by Linet. As the district court noted, the Telecommunications Act does not prevent the Village from treating two applicants different, it just prevents it doing so unreasonably.

Due Process

Linet argues that his due process relates back to his "bad challenge claim" in his original complaint. Put differently, he wants us to read the § 1983 claim in his original complaint filed in district court as a petition for writ of certiorari to review the Village's decision under Florida law. If we do not, Linet correctly concedes that his state law due process claim in his amended complaint is barred by the 30-day statute of limitations. See Fla. R. App. P. 9.100. [*12] Linet however has identified no authority to support this interpretation.

His original complaint makes no mention of Florida procedure or a state law claim. His two claims in this complaint are limited to the Telecommunications Act and § 1983. Only the Telecommunications Act claim is legally cognizable. Moreover pursuant to 28 U.S.C. § 1367 (c)(3) the district court could decline to exercise supplemental jurisdiction over this claim once the Telecommunications Act claim was dismissed. The district court therefore correctly dismissed Linet's state law due process claim. See Am. Riviera Real Estate Co. v. City of Miami Beach, 735 So. 2d 527 (Fla.3d DCA 1999).

Alter or Amend the Judgment

Finally Linet appeals the district court's denial of his motion to amend or alter the final judgment under Federal Rule of Civil Procedure 59(e). Linet's motion to the district court urged it to reconsider its ruling because Linet disagreed with the district court's treatment of certain facts and its legal conclusions. His motion was essentially a motion to reconsider the district court's prior summary [*13] judgment order. [HN12] Linet however cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment. See Stone v. Wall, 135 F.3d 1438, 1442 (11th Cir. 1998); 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995). The district court correctly denied Line's motion to amend or alter the judgment.

**AFFIRMED.**